IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER CORREA,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **No. 18-1375** |
| | : | |
| **NORTH AMERICAN RECOVERY,** | : | |
| *et al.,* | : | |
| *Defendants.* | : | |

## MEMORANDUM

### I. INTRODUCTION

The matter currently before the Court is a putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, that involves a dispute between a debt collection agency and the individual whom the debt collection agency was attempting to collect a credit card debt.

Sometime prior to August 17, 2017, Plaintiff incurred a credit card debt of $784.06 to Merrick Bank.[1] ECF No. 1 at ¶ 15; ECF No. 24 at 12. Any dispute related to Plaintiff's account is governed by the cardholder agreement that she entered into with Merrick Bank (the "Cardholder Agreement"). ECF No. 23-5 at 2; ECF No. 23-9 at 9, 19-31. The Cardholder Agreement contains an arbitration clause that also prohibits class action lawsuits. *Id.* On August 17, 2017,

---
[1] Plaintiff is not contesting her underlying debt with Merrick Bank. ECF No. 24 at 12.

1

Defendant, the debt collection agency assigned by Merrick Bank to collect Plaintiff's debt, sent Plaintiff a letter in an attempt to collect on her credit card debt (the "Debt Collection Letter"). ECF No. 1 at ¶ 25. Plaintiff alleges that the Debt Collection Letter violated sections 1692e(2)(A), 1692e(5), 1692e(10), and 1692f of the FDCPA. *Id.* at ¶¶ 41-72. Defendant files the instant Motion to Compel Arbitration and Strike Class Action Claims, arguing that the arbitration clause in the Cardholder Agreement controls the dispute between the parties. Because the Cardholder Agreement controls, Defendant argues that this matter must be dismissed because arbitration is the proper avenue to resolve this dispute and, similarly, Plaintiff's class action claim must also be stricken and dismissed.

## II. PROCEDURAL BACKGROUND

On April 2, 2018, Plaintiff filed her Complaint in the instant matter. *Id.* On November 19, 2018, Defendant filed its first motion to compel arbitration and strike class action claims. ECF No. 5. After Plaintiff filed her response to Plaintiff's motion and a reply was filed by Defendant, this Court, by Order dated January 30, 2019, denied Defendant's motion to compel arbitration and strike class action claims without prejudice and ordered the parties to engage in limited discovery regarding the question of arbitrability. ECF No. 17. Specifically, the Order directed the parties to limit their discovery as to whether Plaintiff agreed or assented to the Cardholder Agreement. *Id.* On February 22, 2019, the Court

extended the discovery deadline to March 29, 2019. ECF No. 22. On April 19, 2019, Defendant filed its renewed Motion to Compel Arbitration and Strike Plaintiff's Class Action Claims (ECF No. 23), which is currently before the Court.

## III. DISCUSSION

Because Plaintiff's Complaint is unclear on its face as to whether there is an enforceable arbitration agreement, the Court will judge Defendant's Motion to Compel Arbitration under a summary judgment standard.[2] *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Fed. R. Civ. P. 56 allows summary judgment to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A grant of summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (citing Fed. R. Civ. P. 56(c)). In response, the non-moving party must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (internal quotations omitted) (quoting *Celotex*

---

[2] Both parties also agree that the Court should apply a summary judgment standard.

3

*Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In the context of using the summary judgment standard for determinations on arbitration clauses, if "the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause," the court may then proceed to a trial on the issue of arbitration. *Guidotti*, 716 F.3d at 776 (internal quotations omitted) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 2 of the FAA is a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations omitted) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983)). The FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that

4

arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (emphasis in original) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)). In order to compel arbitration pursuant to the FAA, "a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). When determining whether there was a valid agreement to arbitrate between the parties, the presumption in favor of arbitration does not apply. *Id.* To determine whether the parties agreed to arbitrate, courts turn to "ordinary state-law principles that govern the formation of contracts." *Id.* (internal quotations omitted) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[O]nce a court has found that there is a valid agreement to arbitrate . . . the determination of whether 'a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law.'" *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 524 (3d Cir. 2009) (quoting *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003)).

A. <u>Valid Agreement to Arbitrate</u>

The Court now turns to the first prong and whether a valid agreement to arbitrate exists between the parties. The Court notes that Plaintiff does not dispute that the Cardholder Agreement contains language mentioning arbitration. ECF No. 24 at 5. Based on the language in the Cardholder Agreement, and the parties' briefs in support and opposition of arbitration, the Court finds that the Cardholder Agreement does contain an arbitration clause that controls disputes related to card holders' accounts. However, in order to determine whether an agreement to arbitrate exists between the parties, the Court will need to decide two issues. First, whether Plaintiff agreed/assented to the arbitration agreement contained in the Cardholder Agreement and, second, whether Defendant was an assignee to the Cardholder Agreement.

The Court finds that Plaintiff agreed and assented to the arbitration agreement. Defendant, in its Motion, attaches documents supporting its assertion that Plaintiff agreed to the terms of the Cardholder Agreement, and consequently, the arbitration clause.[3] Plaintiff, in her Response, does not dispute that she is

---

[3] The identifying documents Defendant attaches to its Motion include: 1) the electronic application filled out by Plaintiff when she applied for her Merrick Bank credit card, which contained Plaintiff's electronic signature, ECF No. 23-9 at 7-9, demonstrating that she read and agreed to the terms of the Cardholder Agreement, and 2) Plaintiff's account statements for her Merrick Bank credit card, ECF No. 23-9 at 19-31, demonstrating that she made purchases using her credit card. These documents, in conjunction with the Cardholder Agreement that reads: "BY SIGNING THE CARD OR USING IT TO MAKE A PURCHASE . . . YOU AGREE TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT," ECF No. 23-4 at 2, clearly demonstrate that Plaintiff agreed to the terms of the Cardholder Agreement.

6

bound to the Cardholder Agreement's arbitration clause; instead, she submits that the Cardholder Agreement does not apply to Defendant because it was not an assignee to the Cardholder Agreement. Therefore, the Court must determine whether Defendant is an assignee of Merrick Bank and bound by the terms of the Cardholder Agreement.

In its Motion, Defendant attaches a Non-Exclusive Master Collection Agreement (the "Collection Agreement") that is dated August 15, 2016 and entered into between Defendant and Merrick Bank. The Collection Agreement between Defendant and Merrick Bank is an agreement whereby Merrick Bank agreed to assign certain accounts to Defendant for the purpose of collecting the sums due on those accounts. In conjunction with the Collection Agreement, Defendant also attaches a document titled Evidence of Assignment of Debt (the "Assignment Agreement"), which is dated August 16, 2017. In this Assignment Agreement, Merrick Bank specifically assigned its claim and demand against Plaintiff's account that is at issue in the instant matter to Defendant. The Assignment Agreement granted Defendant "full power to sue for, accept payments on [Merrick Bank's] behalf, collect, reassign, or in any other legal manner enforce collection thereof." ECF No. 23-6 at 2.

Plaintiff argues that the parties should be permitted to engage in additional discovery before the Court can decide whether Defendant is an assignee to the

7

Cardholder Agreement. Plaintiff asserts that the Court's previous discovery Order only permitted the parties to engage in limited discovery on whether Plaintiff agreed/assented to the Cardholder Agreement. According to Plaintiff, the language in the Court's Order forbid the parties from engaging in discovery related to whether there was a valid assignment of rights between Merrick Bank and Defendant regarding Plaintiff's debt and the Cardholder Agreement. Therefore, Plaintiff asserts that discovery on Merrick Bank's assignment to Defendant is necessary.

The Court will not permit additional discovery in this matter. First, the parties previously asked this Court to extend the limited discovery deadline. That request was granted by the Court and the parties were given more than an additional month to complete the limited discovery. ECF No. 22. At no point did Plaintiff file a motion, or even inform the Court, prior to its Response to Defendant's Motion to Compel, that additional discovery may be needed on the assignment issue. Second, Plaintiff broadly states that she is permitted to engage in discovery on the assignment issue because there is a dispute between the parties. However, Plaintiff does not argue, or even allege, that discovery will produce anything that will support her position that there was not a proper assignment. Plaintiff's hollow assertion that she is permitted to engage in discovery on the assignment issue, simply because there is a dispute, is not enough to demonstrate

8

to the Court that additional discovery is needed. Third, Defendant, in its Motion to Compel, attached two documents that support assignment (the Collection Agreement and Assignment Agreement). Plaintiff has not come forward with any document to refute Defendant's documents, produced an affidavit that refutes Defendant's documents, or even made an argument that there are documents that will be produced in discovery that will refute Defendant's documents.

Moreover, Plaintiff's reliance on *Page v. N.A.R. Inc.*, 2019 WL 1370146 (D.N.J. Mar. 26, 2019) is unfounded because the facts of *Page* are inapposite to the facts of the instant matter. In *Page*, the defendant attached an assignment agreement, not specific to the plaintiff's account, to its reply in support of its motion to compel arbitration. *Id.* at *3. The defendant, however, never produced any document that demonstrated that the plaintiff's account was specifically assigned to defendant for collection. *Id.* at *4. In the matter currently before this Court, Defendant's general Collection Agreement was attached to its Motion to Compel, not its Reply. Further, Defendant produced the Assignment Agreement – also attached to its Motion to Compel – a critical document that was missing in *Page*. This Assignment Agreement shows that Plaintiff's account was specifically assigned to Defendant, a document the Court in *Page* lacked, which prompted the Court, there, to direct the parties to engage in discovery on the assignment issue. For these reasons, *Page* is not persuasive on this Court's decision to not allow

further discovery. Therefore, because Plaintiff was dilatory in seeking additional discovery on the assignment issue, did not provide the Court with any argument that discovery has any chance of being fruitful on the assignment issue, and failed to produce any affidavit or document that refutes Defendant's assignment documents, the Court will not permit further discovery on the assignment issue.

Moving on to whether Defendant is a proper assignee, Plaintiff attempts to refute the clear assignment language in the Collection Agreement and Assignment Agreement by relying on the Debt Collection Letter Defendant sent to Plaintiff that read: "You are hereby notified the debt you owe to: Merrick Bank has been *placed* with [Defendant] for collections." ECF No. 1-4 at 2 (emphasis added). Plaintiff argues that using the word "placed" instead of "assigned" is juxtaposed with the Collection Agreement. ECF No. 24 at 16. This leads to Plaintiff's conclusion that there is no proof, at this stage, that Defendant was assigned "rights, title, and interest" to Plaintiff's account and the Cardholder Agreement. *Id.*

The Court is not persuaded by Plaintiff's arguments related to assignment. The Court again notes that Plaintiff does not refute Defendant's assignment documents and has not submitted any documents to challenge these documents. Plaintiff argues that the Debt Collection Letter demonstrates that Defendant was not the assignee because it uses the term "places" instead of "assigns." ECF No. 24 at 6, 16. Plaintiff's tortured interpretation of the assignment documents and the

10

Debt Collection Letter cannot stand as a basis for the Court to overlook the plain and clear language of the Collection Agreement and Assignment Agreement. "When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Sw. Energy Prod. Co. v. Forest Res., LLC*, 2013 Pa. Super. 307, 83 A.3d 177, 187 (2013) (quoting *Humberston v. Chevron, U.S.A., Inc.*, 75 A.3d 504, 509-10 (Pa. Super. 2013)). Based on the clear and unambiguous language of these documents,[4] Defendants are assignees to the Cardholder Agreement by way of the Collection Agreement and the Assignment Agreement.

In addition, the Cardholder Agreement specifically states that "[t]his agreement to arbitrate Claims includes all controversies and claims of any kind between us. It also includes any disputes you have with our . . . assignees . . . ."

---

[4] Specifically, the Collection Agreement, in pertinent part, states, "Client agrees to periodically assign, at its sole discretion, accounts to [Defendant] for the purpose of collection. Accordingly, Client hereby transfers, assigns and sets over to [Defendant], Client's claims and demands against all debtors assigned together with all of Client's rights, title and interest therein, and the demands represented thereby, and all rights of action accrued or to accrue. Client further grants to [Defendant], subject to the limitations contained herein, full power to collect, commence legal action to collect, compromise, or in any other legal manner enforce the collection thereof." ECF No. 23-3 at 3. Specifically, the Assignment Agreement, which is signed by Sheldon B. Stewart for Merrick Bank, states in pertinent part that Merrick Bank, "for valuable consideration transferred, assigned and set over to [Defendant] the cause of action and or our/my claim against" Plaintiff's credit card account at issue herein. ECF No. 23-6 at 2. The Assignment Agreement further states, "[t]ogether with all our/my rights and interest therein and the demand represented thereby, and all rights of action accrued or to accrue; and hereby grant to [Defendant] full power to sue for, accept payments on our/my behalf, collect, reassign, or in any other legal manner enforce collection thereof." *Id.*

ECF No. 23-5 at 2. Plaintiff's argument that the language in the Debt Collection Letter creates a dispute as to whether there was an assignment is also irrelevant because the Cardholder Agreement makes clear that Merrick Bank may assign the Cardholder Agreement without Plaintiff's prior consent. ECF No. 23-4 at 7 ("The Bank may sell, assign, or transfer this Agreement . . . or any rights to collect thereunder, at any time and without your prior consent."). Therefore, because the Debt Collection Letter does not, in any way, affect Merrick Bank's assignment of rights to Defendant, the Collection Agreement and the Assignment Agreement are the controlling documents as to the assignment. Accordingly, the Court finds that Defendant is an assignee to the Cardholder Agreement, is bound to its terms, and there is a valid agreement to arbitrate between the parties.

B. Dispute Within Scope of Arbitration Agreement

Next, the Court will determine whether this dispute falls within the scope of the Cardholder Agreement, specifically, the arbitration clause. The arbitration clause contained in the Cardholder Agreement states that "the Claims covered by this agreement to arbitrate include . . . [a]ny disputes *arising from the collection* of amounts you owe in connection with your Account." ECF No. 23-5 at 2 (emphasis added). Plaintiff's Complaint alleges that the Debt Collection Letter, which is the gravamen of the dispute between the parties, "was sent to Plaintiff *in connection with the collection of*" the outstanding sum on Plaintiff's account. ECF No. 1 at ¶

25 (emphasis added). Plaintiff's own Complaint makes it clear that this dispute arises from the collection of amounts owed by Plaintiff.

Plaintiff attempts to distinguish the Debt Collection Letter from arising out of the collection of sums owed on her account because her claim is brought under the FDCPA. Plaintiff contends that her cause of action does not contest her underlying debt, but instead focuses on the alleged misleading and deceptive language in the Debt Collection Letter, taking this matter outside the scope of the Cardholder Agreement. *See* ECF No. 24 at 12. This argument, however, fails to acknowledge the Debt Collection Letter being sent strictly for the purpose of collecting Plaintiff's debt. Plaintiff bringing her claim under the FDCPA does not take this dispute outside the scope of the arbitration clause because the root of this dispute stems from Defendant attempting to collect Plaintiff's debt. Whether the language in the Debt Collection Letter violated the FDCPA does not change the fact that this dispute arises from the collection of a sum owed in connection with Plaintiff's account.

In addition, Plaintiff's argument goes against the purpose of the FAA and its presumption of arbitrability. Under the FAA, it is well settled law that:

> In determining whether the particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not

13

susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Century Indem. Co.*, 584 F.3d at 524 (alteration in original) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986))); *see also Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) (same). The "presumption of arbitrability is particularly applicable" when there is a broad arbitration clause. *Battaglia*, 233 F.3d at 725. Plaintiff has not convinced this Court that the presumption of arbitrability should not be exercised in this matter. Plaintiff has not demonstrated that it can be said with "positive assurances" that the arbitration clause "is not susceptible of an interpretation" that it covers the dispute between the parties. *Id.* For these reasons, the Court resolves any doubts in favor of the arbitration clause covering the instant dispute. Therefore, the dispute between the parties is within the scope of the arbitration agreement because the FAA promotes arbitration and Plaintiff's claim arises out of the collection of a debt concerning Plaintiff's account.

### C. Striking Plaintiff's Putative Class Action Claim

Because this Court has determined that the parties' dispute is controlled by the Cardholder Agreement, specifically the arbitration clause, for those same

reasons, this Court finds that Plaintiff's class action claim must also be dismissed. The Cardholder Agreement forbids the certification of any class action claim.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's entire Complaint, including her class action claim, is dismissed.[5] In accordance with the Cardholder Agreement, if Plaintiff wishes to continue to pursue her individual claim against Defendant, she must do so through arbitration, the terms of which are contained in the Cardholder Agreement. The Court will issue an accompanying order in conjunction with this Memorandum.

**BY THE COURT:**

Dated: 6-6-2019

_____
**CHAD F. KENNEY, JUDGE**

---

[5] The Court notes that when a motion to compel arbitration has been granted, section 3 of the FAA requires courts to stay matters where a stay was requested, "on application of one of the parties." 9 U.S.C. § 3; *see also Lloyd v. HOVENSA, LLC*, 639 F.3d 263, 269 (3d Cir. 2004) ("[W]e hold that the District Court was obligated under 9 U.S.C. § 3 to grant the stay once it decided to order arbitration."). In the instant matter, neither party has requested a stay. Therefore, because the parties have not requested a stay in the event this Court orders arbitration, the Court will not issue a stay of this matter pending the outcome of arbitration.

15